6th meeting, the FDA will determine whether additional human clinical trials are required.

### Undisclosed Adverse Information

42.  The market for Biopure's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Biopure's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Biopure securities relying upon the integrity of the market price of Biopure's securities and market information relating to Biopure, and have been damaged thereby.

43.  During the Class Period, defendants materially misled the investing public, thereby inflating the price of Biopure's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, including, *inter alia*:

(a)  that Biopure had been notified by the FDA, as early as March or April 2003 that the Company's clinical trials of Hemopure for trauma applications had been suspended due to the FDA's concerns with the drug's safety arising from adverse clinical data it had reviewed in connection with the Company's BLA for the commercial marketing of Hemopure to be used in anemic patients undergoing orthopedic surgery;

(b)  that as a result of the FDA's suspension of the Company's clinical trials of Hemopure, FDA approval of Biopure's BLA for commercial marketing of Hemopure in the United States was in serious doubt, and could not have occurred, if at all, sooner than late 2004; and

17

(c) based on the foregoing, defendants' opinions, projections and forecasts concerning the Company and its operations were lacking in a reasonable basis at all times.

44. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Biopure's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Biopure and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## SCIENTER ALLEGATIONS

45. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Biopure, their control over, and/or receipt and/or modification of Biopure's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to

confidential proprietary information concerning Biopure, participated in the fraudulent scheme alleged herein.

46. While defendants were issuing false and misleading statements about Biopure and its business, the Company completed two offerings of its common stock during the Class Period, reaping over $30.6 million in total proceeds. In addition, the Individual Defendants, together with other Biopure insiders, directly or indirectly, disposed of over $1.6 million worth of personally-held stock, benefiting from the artificial inflation in Biopure's stock price resulting from their fraudulent scheme. The Individual Defendants sold shares during the Class Period as follows:

| INSIDER | DATE OF SALE | SHARES SOLD | PRICE PER SHARE | TOTAL VALUE OF SALE |
|---|---|---|---|---|
| Carl W. Rausch | 4/15/03 | 30,000 | $3.13 | $93,900 |
| | 6/5/03 | 2,000 | $6.06 - 6.07 | $12,000 |
| | 6/24/03 | 3,000 | $5.58 - 5.698 | $17,000 |
| | 6/25/03 | 2,700 | $5.80 - 5.97 | $16,000 |
| | 6/26/03 | 34,374 | $5.80 - 5.90 | $201,000 |
| | 6/27/03 | 20,000 | $5.95 - 6.00 | $120,000 |
| | 6/30/03 | 5,000 | $6.14 - 6.16 | $31,000 |
| | 8/5/03 | 10,000 | $7.50 - 7.53 | $75,000 |
| | 8/6/03 | 2,000 | $7.50 - 7.54 | $15,000 |
| | 8/7/03 | 8,000 | $7.00 | $56,000 |
| | 8/8/03 | 10,000 | $7.00 - 7.15 | $71,000 |
| | 8/12/03 | 10,000 | $7.00 - 7.15 | $71,000 |
| | 8/13/03 | 9,500 | $7.02 - 7.15 | $67,000 |
| | 8/28/03 | 100,000 | $7.50 | $750,000 |
| **TOTAL RAUSCH PROCEEDS** | | | | **$1,595,900** |
| Thomas A. Moore | 8/7/03 | 18,750 | $2.42 | $21,175 |
| **TOTAL MOORE PROCEEDS** | | | | **$21,175** |
| **TOTAL PROCEEDS** | | | | **$1,617,075** |

### Applicability Of Presumption Of Reliance: <br> Fraud-On-The-Market Doctrine

47.     At all relevant times, the market for Biopure's securities was an efficient market for the following reasons, among others:

(a)     Biopure's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Biopure filed periodic public reports with the SEC and the NASD;

(c)     Biopure regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Biopure was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

48.     As a result of the foregoing, the market for Biopure's securities promptly digested current information regarding Biopure from all publicly available sources and reflected such information in Biopure's stock price. Under these circumstances, all purchasers of Biopure's securities during the Class Period suffered similar injury through their purchase of Biopure's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

49.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Biopure who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10(b)-5
### Promulgated Thereunder Against All Defendants

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; (ii) enable the Individual Defendants and other Biopure insiders to sell more than $1.6 million worth of their personally-held shares of Biopure common stock at artificially inflated prices; and (iii) cause plaintiff and other members of the Class to purchase Biopure's securities at artificially inflated prices. In

21

furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

52. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Biopure's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

53. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Biopure as specified herein.

54. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Biopure's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Biopure and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Biopure securities during the Class Period.

55. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

56. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Biopure's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

57.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Biopure's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Biopure's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Biopure securities during the Class Period at artificially high prices and were damaged thereby.

58.     At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Biopure was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Biopure securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

59.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

60.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against Individual Defendants

61. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62. The Individual Defendants acted as controlling persons of Biopure within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63. In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

64. As set forth above, Biopure and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section

25

20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiffs counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 8, 2004

MOULTON & GANS, P.C.

By: _Nancy Freeman Gans (auth)_
Nancy Freeman Gans, BBO #184540
33 Broad Street, Suite 1100
Boston, MA 02109-4216
Telephone: (617) 369-7979
Facsimile: (617) 369-7980

**MILBERG WEISS BERSHAD
 HYNES & LERACH LLP**
Steven G. Schulman
Peter E. Seidman
Sharon M. Lee
One Pennsylvania Plaza - 49th Floor
New York, NY 10119
(212) 594-5300

**LAW OFFICES OF BRUCE G. MURPHY**
Bruce G. Murphy
265 Llwyds Lane
Vero Beach, FL 32963
(772) 231-4202

**Attorneys for Plaintiff**

27

NOV-03-2003(MON) 10:12  TAOS/PNYS FIELD SUPPORT                    (FAX)

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, __Joseph L. King__, ("Plaintiff") declare the following claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 1000 | BPUR | BUY | 8/21/03 | 8.06 |

Please list other transactions on a separate sheet of paper, if necessary.

5. During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below:

6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __3rd__ day of __November__, 2003.

_[signature]_                                    __Joseph L. King__
Signature                                         Print Name